UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATALIA E. CURTO,

                Plaintiff,

v.

IMMIGRATION LAWYERS, P.C., AND
CHARLES H. CUI,

                Defendants.

Jury Demand

COMPLAINT

## COMPLAINT

1. Plaintiff Natalia E. Curto complains against her former employers, Defendant Immigration Lawyers, P.C., a Chicago immigration law practice, and Defendant Charles H. Cui, its president, for violations of statutory and common law in their efforts to defraud Ms. Curto and the federal government by sponsoring an H1-B visa for Ms. Curto, promising to pay her the prevailing wage, and then utterly failing to do so. Not only did Defendants fail to pay her the federally mandated prevailing wage, but they failed to properly pay her overtime wages and her earned vacation time in violation of Illinois law. They also discriminated against her based on her national origin and created a hostile work environment. Now, Defendants owe Ms. Curto thousands of dollars in damages that continue to accrue.

## NATURE OF THE ACTION

2. Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") breached Plaintiff's employment contracts, breached the implied covenant of good faith and fair dealing, and engaged in fraudulent misrepresentation by violating Section 1182(n) of the Immigration and Nationality Act. 8 U.S.C.

§ 1182(n). Plaintiff may amend her complaint to include a claim based on hostile work environment due to national origin discrimination after her charge is perfected.

## JURISDICTION AND VENUE

3. The Court may exercise subject-matter jurisdiction over this action because it arises under the laws of the United States. 28 U.S.C. § 1331.

4. The Court may exercise supplemental jurisdiction over the state and common law claims. 28 U.S.C. § 1367.

5. The court may exercise personal jurisdiction over Defendants. Defendant Immigration Lawyers, P.C., is an Illinois corporation that transacts business in Chicago, Illinois and is headquartered in this judicial district. Defendant Cui is a citizen of Illinois who resides in Lake Forest, Illinois. Also, Defendant Cui transacts business in this judicial district.

6. Venue is appropriate in this judicial district as the events giving rise to the action occurred here and the parties are residents of this judicial district. 28 U.S.C. §§ 1391(b)(1)-(2).

## THE PARTIES

7. Plaintiff Natalia E. Curto is a citizen of Illinois and a resident of Chicago, Illinois.

8. Defendant Immigration Lawyers, P.C., (the "Company") is an Illinois professional corporation that conducts business from its principal office at 4901 W. Irving Park Road, Chicago, Illinois, 60645. At all times, Defendant employed at least five employees.

9. Defendant Charles H. Cui ("Cui") is the founder and president of Immigration Lawyers, P.C., On information and belief, he is the sole officer and managing partner. At all times he employed at least five employees.

## FACTS RELEVANT TO ALL CLAIMS

10. Ms. Curto is a citizen of Argentina and Italy, who was born in Argentina. She speaks Spanish, Italian, and English fluently. She had more than 15 years' experience practicing law in Italy and Argentina before coming to the United States.

11. She graduated with honors from the Chicago-Kent College of Law with an LL.M. degree.

12. Cui is a real estate developer, the owner of Retro Fitness Gym in Chicago, and an immigration attorney barred in the State of Michigan.[1]

13. Defendants hired Ms. Curto as a paralegal in March 2020 with the expectation that she would become an associate attorney when she passed the Illinois bar.

14. On March 2, 2020, Defendants emailed Ms. Curto the terms of her employment and asked her to accept the terms, which she did. *See* Ex. A (the "2020 Agreement").

15. Under the terms of the 2020 Agreement, Ms. Curto was entitled to a base wage of $20 per hour and one week's paid vacation per year after six months of employment. *Id.* ("You will have one week paid vacation per year after six months of employment, plus paid major national holidays . . . .").

16. The 2020 Agreement anticipates that Ms. Curto would be expected to work overtime and would be paid for that overtime. *Id.* ("But lots of times, employees work lots of hours beyond the basic hours, which are paid anyway.").

---

[1] On April 11, 2019, the United States indicted Charles Cui on five counts for bribing Chicago Alderman Edward M. Burke to secure permits for the redevelopment of the property he owned at 4901 W. Irving Park Road. A criminal case, 19 CR 322-3, is pending in the U.S. District Court for the Northern District of Illinois.
A civil case is pending against Cui's real estate company for failure to pay the mortgage on the property at 4901 W. Irving Park Road.

17. The 2020 Agreement states that "after 3 months of probation/training period, you will start receiving 2% of fees of cases you worked on after deducting your base pay, as part of your compensation packages to be paid every month. Based on our current case load, that will be sizable incentives." *Id.*

18. In the 2020 Agreement, Defendants promised to sponsor Ms. Curto for an H1-B visa and permanent residency. *Id.*

19. Ms. Curto started work on or about March 7, 2020.

20. Ms. Curto performed outstanding work for Defendants. Throughout her employment, Ms. Curto was trusted by clients and received stellar reviews.

21. She received the "Employee of the Month" award at least four times.

22. Ms. Curto was sworn in to the Illinois bar on May 7, 2020. Defendants raised her pay by $5 per hour but continued paying her on an hourly basis.

23. Ms. Curto regularly worked more than 40 hours per week.

24. They paid her $25 per hour for all hours worked, even those in excess of 40 hours per week. Defendants never paid *any* overtime at the rate of time-and-a-half to Ms. Curto.

### HI-B Visa Fraud

25. On or about May 20, 2020, Defendants filed a Form I-129 Petition for Nonimmigrant Worker ("I-129") and a Labor Condition Application for Nonimmigrant Workers ("LCA") so that Ms. Curto could receive her H1-B visa. *See* Ex. B.

26. On both documents, Defendants set Ms. Curto's compensation at a rate of $71,282 per year as required by the U.S. Department of Labor's prevailing wage scale.

27. At the time, Cui promised Ms. Curto that her compensation would "get there" and she would be paid the prevailing wage with time.

28. Ms. Curto believed Defendants and continued working with the expectation that she would be paid $71,282.00 effective October 1, 2020.

29. Ms. Curto's H1-B visa was approved in September 2020 and she started working on H1-B status on October 1, 2020.

30. The Company has a history of hiring non-citizen employees, offering to sponsor their permanent residency, and then mistreating them. Cui knows non-citizens are unlikely to report his unethical conduct, his failure to pay the prevailing wage, and his violations of the law because they depended on him to sponsor their H1-B status and/or permanent residency.

### Hostile Work Environment Based on National Origin Discrimination

31. Throughout her employment, Cui regularly screamed at Ms. Curto and berated her for "not speaking English well." Cui assigned her to work primarily with Spanish-speaking clients.

32. He disparaged Ms. Curto's abilities, falsely claiming she was "not a real lawyer" and wasn't able to speak English well enough to work on employment-related immigration cases.

33. Cui controlled Ms. Curto's execution of her duties closely.

34. Defendants Cui's relentless harassment of Ms. Curto based on her Argentinian national origin created a hostile work environment.

35. Cui treated his employees, who were U.S. citizens, better than he treated Ms. Curto, who is not a U.S. citizen.

36. Cui regularly had his three paralegals and office manager, who were U.S. citizens, work on employment-related immigration cases and even on court cases. Cui ordered them to engage in the unlicensed practice of law.

37. The hostile work environment Cui created caused Ms. Curto great emotional distress. She started receiving mental health treatment because of his constant harassment based on her national origin.

38. In December 2020, Ms. Curto was working overtime while Cui and all three paralegals (all U.S. citizens) were on vacations. She later learned that all three paralegals received promotions or raises at that time, and she was the only employee to not receive any change in compensation or promotion.

39. In January 2021, Cui screamed at Ms. Curto in front of the entire staff because she had prepared a FedEx label in a way that would cost *one extra dollar*.

40. After that incident, Cui marginalized Ms. Curto from the other staff and stopped talking to her. Subsequently, the other employees stopped talking to her.

### **Termination and Damages**

41. On March 23, 2021, Ms. Curto asked Cui for a raise. In response, he screamed at her, falsely claiming she was unproductive and ineffective. Again, he excoriated that she didn't speak or write English well and was "not even a real lawyer."

42. The next day, Defendants terminated Ms. Curto's employment.

43. Defendants claimed that they had no more work for her to do. This was a lie. At the time, Ms. Curto was the only other attorney working, and she had at least 20 pending cases and was preparing to attend 10 upcoming interviews.

44. Defendants hired another newly admitted attorney shortly after terminating Ms. Curto.

45. Defendants refused to pay Ms. Curto her earned vacation time, proper overtime, and the differential between the prevailing wages she had been promised and the wages she was paid.

46. Defendants still owe thousands of dollars in wrongfully withheld wages to Ms. Curto, as well as statutory interest and attorneys' fees, which continue to accrue.

47. Defendants committed these tortious acts willfully.

48. Ms. Curto has sustained monetary non-pecuniary damages including lost wages, injury to professional reputation, emotional distress and mental anguish because of Defendants' tortious actions.

49. In 2022, after Ms. Curto filed a Section 1182(n) complaint with the Department of Labor, Defendants falsely claimed to the DOL that Ms. Curto owed them money for filing immigration petitions on her behalf.

50. Defendants never filed an Immigrant Petition for Alien Worker (I-140) or an Application to Adjust Status (I-485) on behalf of Ms. Curto.

51. Defendants never filed a petition for an H-4 visa on behalf of Ms. Curto's daughter.

52. Defendants did submit a Program Electronic Review Management ("PERM") labor certification to the DOL for Ms. Curto, but abandoned it when she was terminated.

53. Defendants never asked, and Ms. Curto never agreed, to pay a filing fee for any visa petition or PERM labor certification.

54. Defendants' false claims that Ms. Curto owes them thousands of dollars for filing petitions they never filed and demands for monies she does not owe, speaks to their retaliatory character.

## COUNT I: VIOLATION OF FLSA
## 29 U.S.C. § 201
### Plaintiff Against All Defendants

55. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

56. Defendants were employers within the meaning of the Act. 29 U.S.C. § 203.

57. Cui had the power to act on behalf of Immigration Lawyers, P.C., with respect to Plaintiff's employment, including her compensation.

58. Immigration Lawyers, P.C., had an annual gross volume of business done that was over $500,000.

59. Immigration Lawyers, P.C., is an enterprise covered by FLSA. 29 U.S.C. § 203(s)(1)(A)(ii).

60. As part of her work, Plaintiff transacted business via channels of interstate commerce, telecommunication, and U.S. Mail. She communicated with clients in Oklahoma, Wisconsin, Indiana, and Seattle, Washington.

61. Plaintiff was engaged in interstate commerce and therefore covered by FLSA. 29 U.S.C. § 203(r)(1).

62. FLSA requires that covered employers pay covered employees at a rate not less than one and a half times the regular rate for any hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1).

63. Defendants paid Plaintiff on an hourly basis and expected her to work overtime, as evidenced in the 2020 Agreement.

64. Defendants knew that Plaintiff was working overtime, and knew they had an obligation to pay Plaintiff properly for her overtime.

65. Defendants paid Plaintiff the same wage, $25, for overtime hours that they paid her for regular hours.

66. Defendants should have paid Plaintiff $37.50 an hour for each overtime hour worked. They did not.

67. Defendants knowingly violated FLSA by failing to pay Plaintiff time-and-a-half for her overtime hours.

68. Defendants owe Plaintiff in excess of $3,164.00 for unpaid overtime.

69. FLSA mandates liquidated damages for willful violations. 29 U.S.C. § 216.

### PRAYER FOR RELIEF

70. Wherefore, Plaintiff prays that this Court enter judgment in her favor and against Defendants as follows:

   A. Find that Defendants willfully failed to pay Plaintiff overtime at time-and-a-half in violation of FLSA;

   B. Award Plaintiff her unpaid wages damages;

   C. Award liquidated damages;

   D. Award interest;

   E. Award costs of maintaining this suit, including reasonable attorney's fees;

   F. Award all further relief that this Honorable Court deems just and proper.

### COUNT II: VIOLATION OF THE IWPCA
### 820 ILCS 115
### Plaintiff Against All Defendants

71. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

72. Plaintiff was an employee within the meaning of the IWPCA, because she was permitted to work by an employer in the State of Illinois. 820 ILCS 115/2.

9

73. Defendants Cui and Immigration Lawyers, P.C., are employers within the meaning of the Act, and are jointly and severally liable. 820 ILCS §§ 115/2, 13.

74. Section 13 of the IWPCA provides that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of [the IWPCA] shall be deemed to be the employers of the employees of the corporation." 820 ILCS § 115/13.

75. Defendant Cui is an officer of Immigration Lawyers, P.C., and he knowingly permitted it to not pay Plaintiff all compensation due to her.

76. The IWPCA mandates that Defendants pay Plaintiff all compensation promised under the terms of the 2020 Agreement and the I-129 petition and LCA.

77. Section 2 defines "final compensation" as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the two parties." 820 ILCS 115/2.

78. Plaintiff earned her final compensation by working overtime, earning the prevailing wage, and working six months to earn one week's paid vacation.

79. Plaintiff did not take any vacation time.

80. Defendants knowingly failed to pay Plaintiff's accrued vacation time, overtime wages, and the prevailing wage promised in the I-129 and LCA.

81. In violation of the IWPCA, Defendants purposefully withheld Plaintiff's final compensation, which included but was not limited to her accrued vacation time, full overtime wages, and difference between her wages paid and the prevailing wages due.

82. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer lost wages and other damages.

83. Defendants currently owe Plaintiff $3,163.79 plus interest and statutory penalties for her unpaid overtime.

84. Defendants currently owe Plaintiff $1,485.40 plus interest and statutory penalties for her unpaid vacation time.

85. Defendants currently owe Plaintiff $15,382.89 plus interest and statutory penalties for her unpaid prevailing wage.

86. IWPCA also mandates that Plaintiff recover five percent (5%) interest per month penalties and attorneys' fees expended in pursuit of her unpaid wages. *See* 820 ILCS 115/2, 14(a); 735 ILCS 5/13-206.

### PRAYER FOR RELIEF

87. Wherefore, Plaintiff prays that this Court enter judgment in her favor and against Defendants as follows:

A. Find that Defendants violated the IWPCA;

B. Award compensatory damages to account for her lost compensation, including, but not limited to, annual bonuses, unpaid commission fees, unpaid salary, vacation pay and final compensation.

C. Award statutory damages of five percent (5%) of the amount of any such underpayments for each month following the date of payment during which such underpayments remained unpaid;

D. Award interest;

E. Award the costs of maintaining this action, including reasonable attorneys' fees; and

F. Any other relief this Court deems just and necessary.

### COUNT VI: ILLINOIS MINIMUM WAGE LAW
### 820 ILCS 105
### Plaintiff Against All Defendants

88. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

89. Defendants were employers within the meaning of the IMWL. 820 ILCS 105/3(c).

90. Section 3(b) defines "wages" as "any compensation due to an employee by reason of his employment," includes a "corporation" as an employer, and states that an employee "includes any individual permitted to work by an employer in an occupation." 820 ILCS 105/3(b).

91. Section 4(a) provides that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." 820 ILCS 105/4(a).

92. Section 12 declares that "[a]ny agreement between the employee and the employer to work for less than such wage is no defense…" 820 ILCS 105/12.

93. Defendants were aware of their obligations under the IMWL and failed to pay Plaintiff overtime as required by section 4(a). 820 ILCS 105/4(a).

94. At all times, Defendants paid Plaintiff the regular wage rate for overtime worked.

95. Any agreement to work for less than time-and-a-half overtime is void *ab initio*. 820 ILCS 105/12.

96. Defendants owe Plaintiff thousands of dollars in unpaid overtime wages.

97. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer substantial harm including lost wages, emotional distress, and other damages.

**PRAYER FOR RELIEF**

98. Wherefore, Plaintiff prays that this Court enter judgment in her favor and against Defendants as follows:

A. Find that Defendants willfully failed to pay Plaintiff overtime at time-and-a-half in violation of IMWL;

B. Award Plaintiff her unpaid wages damages;

C. Award treble damages;

D. Award statutory interest;

E. Award costs of maintaining this suit, including reasonable attorney's fees; and

F. Award all further relief that this Honorable Court deems just and proper.

## COUNT III: BREACH OF CONTRACT
**Plaintiff Against All Defendants**

99. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

100. On or around March 2, 2020, Defendants and Ms. Curto executed the 2020 Agreement. Ex. A. They agreed Defendants would pay her wages, including overtime, 2% case fee commissions, vacation time, they would sponsor her H1-B visa, and allow her the best chance to succeed professionally and financially.

101. Plaintiff performed her responsibilities under the 2020 Agreement by performing excellent legal work for Defendants.

102. Defendants promised to pay her overtime.

103. Defendants breached the 2020 Agreement by failing to pay Plaintiff earned overtime and accrued vacation pay.

104. Defendants owe thousands of dollars in unpaid overtime and vacation pay to Plaintiff.

105. Additionally, Defendants promised to provide "the best chance to grow and succeed professionally and financially."

106. Defendants engendered a toxic, hostile work environment in which they berated Plaintiff, screamed at her, failed to pay her, treated her worse than other employees because of her national origin.

107. Defendants breached their promise to provide the best chance to grow and succeed financially and professionally.

108. Defendants and Plaintiff also had a contract wherein they agreed that Defendants would pay her the prevailing wage and Plaintiff would work as an associate attorney.

109. Defendants also promised Plaintiff that they would pay her the prevailing wage reflected on the I-129 and LCA.

110. Plaintiff negotiated the contracts in good faith and performed all her obligations by working as an associate attorney for Defendants.

111. Defendants negotiated the contracts in bad faith and never intended to perform all their obligations.

112. Despite Plaintiff's performance, Defendants never paid Plaintiff her owed compensation, thereby breaching the agreement.

113. Defendants' failure to pay Plaintiff her owed compensation and the fraudulent promises embedded in the contract violated the covenant of good faith and fair dealing implied in every contract.

114. Defendants' violation of the implied covenant of good faith and fair dealing has caused Plaintiff substantial harm.

115. Plaintiff has suffered damages including but not limited to lost wages, emotional distress, humiliation and loss of professional standing.

## PRAYER FOR RELIEF

116. WHEREFORE, Plaintiff requests that this Court enter a judgment in her favor and against Defendants as follows:

A. Find that Defendants breached the 2020 Agreement, the I-129 and LCA;

B. Find that Defendants violated the implied covenant of good faith and fair dealing;

C. Award damages in an amount equal to the unpaid amounts due;

D. Award damages for emotional distress resulting from Defendants' breaches;

E. Award costs of maintaining this action, including reasonable attorneys' fees; and

F. Award all further relief that this Honorable Court deems just and necessary.

## COUNT IV: FRAUDULENT MISREPRESENTATION
### Plaintiff Against All Defendants

117. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

118. When Defendants filed the I-129 and LCA with the U.S. Department of Homeland Security's U.S. Citizenship and Immigration Services, they swore they would pay Plaintiff a wage of $71,282 per year.

119. Defendants knew they were obligated to pay Plaintiff the prevailing wage by Section 1182(n) of the Immigration and Nationality Act.

120. In May 2020, at the workplace, Defendants, through Charles Cui, intentionally and falsely told Plaintiff that they would pay her the prevailing wage.

121. Defendants intended Plaintiff (and the U.S. government) to rely on that false statement so that she would continue working for them.

122. Plaintiff continued to work for Defendants with the understanding that she would be paid the prevailing wage.

123. Defendants never intended to pay Plaintiff the prevailing wage as evidenced by their failure to do so.

124. Defendants paid Plaintiff $55,222.50 for one year's work instead of the $71,282.00 wage to which she was entitled.

125. Defendants knew that Plaintiff would be reluctant to jeopardize her visa by complaining about being unpaid once the H1-B visa application had been filed.

126. Defendants' failure to pay Plaintiff the prevailing wage violated Section 1182(n) of the Immigration and Nationality Act. 8 U.S.C. § 1182(n).

127. Defendants' conduct was fraudulent.

128. Because of Defendants' fraudulent conduct, Plaintiff was deprived of over $15,382.89 in compensation.

129. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial harm including lost wages, emotional distress, and other damages.

**PRAYER FOR RELIEF**

130. Wherefore, Plaintiff prays that this Court enter judgment in her favor and against Defendants as follows:

A. Find that Defendants fraudulently misrepresented to Plaintiff that she would be paid the prevailing wage;

B. Award Plaintiff her unpaid wages damages;

C. Award punitive damages;

D. Award interest;

E. Award costs of maintaining this suit, including reasonable attorney's fees; and

F. Award all further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

131. Plaintiff demands a trial by jury of all issues raised in this Complaint.

Dated: January 21, 2022							Respectfully submitted,

												NATALIA E. CURTO

										By:	/s/	Laura Lefkow-Hynes
											One of Plaintiff's Attorneys


The Prinz Law Firm, P.C.
Amit Bindra (abindra@prinz-lawfirm.com)
Laura Lefkow-Hynes (llefkowhynes@prinz-lawfirm.com)
One East Wacker Drive, Suite 2500
Chicago, Illinois 60601
P: (312) 212-4450
F: (312) 284-4822